TISHMAN MIDWEST MANAGEMENT CORPORATION, Plaintiff and Counterdefendant-Appellee, v. WAYNE JARVIS, LTD., Defendant and Counterplaintiff-Appellant.

First District (1st Division)   No. 85—2263

Opinion filed July 21, 1986.—Rehearing denied September 3, 1986.

Wayne Jarvis, Ltd., and Winston & Strawn, both of Chicago, for appellant.

Louis R. Hegeman, Jay D. Stein, and Deborah T. Haddad, all of Gould & Ratner, of Chicago, for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Tishman Midwest Management Corporation (Tishman), is the managing agent for the landlord of an office building located in downtown Chicago at 55 East Monroe Street and known as Mid-Continental Plaza (Mid-Continental). Defendant, Wayne Jarvis, is an attorney who practices law in Chicago under the corporate structure of Wayne Jarvis, Ltd. (Jarvis), and is a former tenant of the building.

In June 1983, Tishman sued Jarvis for breach of its lease at

Mid-Continental. In response, Jarvis filed an answer and a two-count class action counterclaim seeking approximately $8 million from Tishman. On Tishman's motion, the trial court dismissed both counts of the class action counterclaim. Jarvis has appealed only the court's dismissal of count II of its counterclaim.

Beginning in 1977, Jarvis practiced law from office space as a tenant at Mid-Continental. On June 7, 1982, Jarvis entered into a seventh amendment to its lease, substantially reducing the size of its premises and decreasing its rent from $124,836.03 annually to $34,722.91 annually. Under the provisions of the seventh amendment, Jarvis' tenancy was to continue until April 30, 1987. The lease provided that the rent paid by Jarvis was comprised of base rent, real estate taxes, operating expenses, and tenant charges. Wayne Jarvis, who personally negotiated the lease with Tishman, executed a guaranty of the obligation of Wayne Jarvis, Ltd., under its lease.

On September 23, 1982, Jarvis, with almost five years remaining on its lease, vacated its office space at Mid-Continental. In a two-count amended complaint, as stated above, Tishman sought to recover damages for breach of the lease and to enforce the personal guaranty of Wayne Jarvis.

In answer to the complaint, Jarvis admitted that it entered into the lease, that it vacated the premises and that it stopped paying rent. Along with its answer, Jarvis filed a two-count class action counterclaim against Tishman, seeking recovery of approximately $8 million from Tishman on behalf of a class purportedly consisting of all tenants at Mid-Continental.

In count I of the class action counterclaim, Jarvis alleged that Tishman overcharged the tenants at Mid-Continental for real estate taxes because the taxes paid by Tishman on the parcels of real estate on which the building sat were less than the taxes passed along to the tenants.

In count II of the counterclaim, Jarvis alleged that Tishman improperly reimbursed itself for attorney fees it allegedly incurred in obtaining real estate tax savings for Mid-Continental prior to passing the tax savings along to the tenants. This resulted, Jarvis argues, in higher rental charges than authorized in the lease.

Count II is based on an interpretation of paragraph 27(b) of the lease which provided as follows:

> "The term 'Ownership Taxes' shall mean all taxes and assessments, of every kind and nature, special or otherwise, levied upon or with respect to the Property, including without

limitation general real property taxes, imposed by federal, state or local governments (excluding income, franchise, capital stock, federal and state estate and inheritance taxes, and taxes based upon receipt of rentals) and any personal property taxes imposed upon fixtures, machinery, apparatus systems and appurtenances in, upon or used in connection with the Building for the operation thereof.

\*\*\*

General real property taxes for the Base Year shall be determined by multiplying the equalized assessed valuation (i.e., the value to which the applicable tax rate is applied in finally determining the actual amount of the general real property taxes for such year) of the Property on January 1, 1976, (subject to such reduction as may be obtained, if any) by the aggregate tax rate last published prior to the date hereof provided, that if partial completion or partial occupancy has been taken into account in determining any of the factors used in calculating equalized assessed valuation of the Property, then the amount of the equalized assessed valuation of the Property will be equitably adjusted to the amount that it would have been had the Building been fully completed and occupied during all of the Base Year. In the event there shall be a subsequent increase or reduction in the equalized assessed valuation of the Property, for any reason whatsoever, which affects the determination of the Ownership Taxes for the Base Year, or any Comparison Year, which would result in a rent increase or decrease hereunder, the Ownership Taxes for the Base Year or such Comparison Year shall be recalculated taking into account the revised equalized assessed valuation, and any resulting increase or decrease in the Rental, as the case may be, *less the expenses incurred in effecting any such reduction,* shall be paid simultaneously with or applied as a credit against the Rental next becoming due." (Emphasis added.)

Jarvis contends that paragraph 27(b) provided that the lessor's expenses should be deducted if and only if it obtains a reduction in the equalized assessed valuation which results in a rent decrease. Jarvis maintains that there was neither a reduction nor a decrease in rent for the tax years at issue, and that Tishman improperly added rather than deducted its legal expenses for each of those years.

Tishman moved to dismiss count I pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch.

110, par. 2—619(a)(9)), because count I was based on the fact that Mid-continental sat on only three parcels, when it in fact sat on four. Attached to the motion to dismiss count I was an affidavit along with documentary evidence establishing that Mid-Continental sat on four parcels, not three. The motion established the fact that, by adding the fourth parcel omitted by Jarvis, Tishman had properly charged its tenants for real estate taxes. As noted above, Jarvis does not appeal the dismissal of count I.

Tishman moved to dismiss count II pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), on the assertion that count II was based on an erroneous interpretation of an unambiguous provision of the lease. Specifically, Tishman contended that because Jarvis' interpretation of paragraph 27(b) was incorrect as a matter of law, it was entitled to dismissal of count II.

Tishman also sought dismissal of both counts of the counterclaim pursuant to section 2—615 because Jarvis failed to allege facts establishing that it could maintain a class action on-behalf of the tenants at Mid-Continental. Tishman contended that Jarvis could not meet the requirements necessary to qualify for class-representative status under section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—801).

On July 15, 1985, the trial court entered an order dismissing with prejudice count I of the counterclaim under section 2—615. Regarding the dismissal of count II, the trial court determined that paragraph 27(b) clearly allowed Tishman to subtract attorney fees it incurred in obtaining real estate tax reductions from the credits it passed on to the tenants even if there was not a consequent rent reduction. The trial court did not decide Tishman's challenge of count II under section 2—801 because it held that count II failed to state a cause of action, and therefore, that aspect of Tishman's motion is not before this court.

The issues presented in this appeal are: (1) whether the trial court erred in dismissing count II of Jarvis' class action counterclaim under section 2—615 of the Code of Civil Procedure; and (2) whether the trial court abused its discretion in denying Jarvis leave to amend count II.

On appeal, Jarvis argues that the language of paragraph 27(b) is clear and unambiguous and that the trial court erred in its refusal to adopt Jarvis' interpretation of the lease. In the alternative, Jarvis also argues that by referring to the language of paragraph 27(b) as "inarticulate," the trial court was obviously interpreting paragraph

27(b) as ambiguous, and thus, the trial court erred in not allowing Jarvis the opportunity to conduct discovery to determine the meaning of paragraph 27(b). Therefore, it is Jarvis' contention that regardless of whether this court finds the wording of the lease to be clear or ambiguous, the trial court erred in granting the motion to dismiss. We find no merit in Jarvis' argument and, for the reasons set forth below, we affirm the trial court's granting of the motion to dismiss count II.

■ As noted above, count II of Jarvis' counterclaim seeks an interpretation of paragraph 27(b) of the lease. It is well established in Illinois that the rules regarding the construction of written contracts are applicable to written leases. (*Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152.) The primary objective in contract interpretation is to give effect to the intention of the parties involved, and, if the contract is clear and unambiguous, then the parties' intent must be determined solely from the plain language of the contract. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886.) The question of whether a contract is ambiguous is a question of law to be determined by the court (*UIDC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 230, 490 N.E.2d 164), and an ambiguity can be found only if the language is reasonably or fairly susceptible to more than one construction (*Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 230, 392 N.E.2d 697). However, the mere failure of the parties to agree on the proper construction does not render a contract ambiguous. *Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 936, 425 N.E.2d 1354.

■ If the court determines that a contract is ambiguous, then the interpretation of the contract is a question of fact. (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974, 418 N.E.2d 59.) But, if the contract is clear and unambiguous, then its interpretation is a question of law, and the words of the contract must be given their plain and ordinary meaning. (*URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 235, 427 N.E.2d 1295.) The trial court may not consider extrinsic evidence outside the contract itself when the contract is unambiguous (*National Aircraft Leasing, Ltd. v. American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1020, 394 N.E.2d 470), but must consider the contract from within its four corners (*Book Production Industries, Inc. v. Blue Star Auto Stores, Inc.* (1961), 33 Ill. App. 2d 22, 30, 178 N.E.2d 881). Once the trial court has interpreted the contract as a matter of law, the reviewing court may likewise independently construe the contract. *Zale Con-*

*struction Co. v. Hoffman & Consolidated Realty Co.* (1986), 145 Ill. App. 3d 235.

■■ In its counterclaim, Jarvis alleges that Tishman has breached the terms of the lease by subtracting rather than adding the attorney fees incurred by Tishman in obtaining real estate tax reductions from the credit given to the tenants. According to Jarvis, paragraph 27(b) provides that the lessor's expenses should be deducted if and only if it obtains a reduction in the equalized assessed valuation which results in a rent decrease. After reading the contract is a harmonious whole, as we are required to do (*Epstein v. Yoder* (1979), 72 Ill. App. 3d 966, 973, 391 N.E.2d 432, citing *Coney v. Rockford Life Insurance Co.* (1966), 67 Ill. App. 2d 395, 399, 214 N.E.2d 1), we disagree with Jarvis' interpretation of the lease provision, and find, as did the trial court, that Jarvis' interpretation of paragraph 27(b) is clearly erroneous.

■ A review of the record here reveals that the trial court reviewed the language of the lease in its entirety and determined, as a matter of law, that paragraph 27(b) allowed Tishman to subtract the attorney fees it incurred in obtaining real estate tax reductions from the credits it passed on to the tenants. Although the trial court did describe the language of paragraph 27(b) as "inarticulate," there is no indication in the record that the court found the language to be ambiguous, contrary to the unsupported assertions made in Jarvis' brief. In light of the fact that the language of the lease is unambiguous, the trial court properly did not consider extrinsic evidence, but instead rendered its interpretation of paragraph 27(b) solely from a review of the plain language of the lease. See *National Aircraft Leasing, Ltd. v. American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1020, 394 N.E.2d 470.

Paragraph 27(a) of the lease agreement between Jarvis and Tishman provides that the base rent under the lease shall be adjusted by the tenants' *pro rata* share of any increase or decrease in "Ownership Taxes," and paragraph 27(b) of the lease specifically defines "Ownership Taxes" to include real estate taxes on the property here in question. Paragraph 27(b) also contains a provision dealing with the situation where the landlord, pursuant to paragraph 27(a), passes along a tax reduction and owes a credit to the tenant. Once the reduction is obtained, the "Ownership Taxes" are to be:

> "recalculated taking into account the revised equalized assessed valuation, and any resulting increase or decrease in the Rental, as the case may be, *less the expenses incurred in effecting any such reduction*, shall be paid simultaneously with

or applied as a credit against the Rental next becoming due." (Emphasis added.)

Thus, we believe, as the plaintiff argues, that when read together in conjunction with paragraph 27(a), the plain language of paragraph 27(b) provides that while the landlord must pass along any subsequent tax savings to the tenants, the landlord may first be reimbursed for the expenses it incurred in obtaining that reduction, which obviously includes attorney fees.

■■ ■ Jarvis, however, in a somewhat distorted reading of paragraph 27(b), maintains that the landlord may not deduct its legal expenses before passing on the tax savings to the tenants. Rather, he contends that the landlord must add its legal expenses to the tax savings passed on to the tenants thereby actually increasing the tax savings. Under this twisted interpretation of the lease, the landlord must pay its legal fees twice: once when it pays its attorney fees, and a second time when it adds the fees to the tax savings passed on to the tenants. Although we recognize that an inarticulate or inartfully drawn contractual provision must be construed against the drafter (*Hufford v. Balk* (1986), 113 Ill. 2d 168), a court may not, however, place a ridiculous construction upon contractual language (*Epstein v. Yoder* (1979), 72 Ill. App. 3d 966, 973, 391 N.E.2d 432). The law is well settled in Illinois that where a contract is susceptible to one of two constructions, " 'one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes its inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.' " (*Camp v. Hollis* (1974), 332 Ill. App. 60, 68, 74 N.E.2d 31, citing 12 Am. Jur. *Contracts* sec. 250, at 792 (1938); see also *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 839, 422 N.E.2d 86; *Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 229, 392 N.E.2d 697.) It is only logical that as Jarvis benefits from Tishman's efforts from a successful tax protest, Tishman should be allowed to recover the expenses incurred in obtaining a reduction before passing on the savings to the tenants. Thus, the trial court properly rejected Jarvis' interpretation of paragraph 27(b) and agreed with Tishman that under the terms of the lease, Tishman may subtract its legal expenses before passing on the tax credits to its tenants. We, therefore, affirm the trial court's granting of the motion to dismiss.

Even assuming *arguendo* that the language of paragraph 27(b) was ambiguous, the rule to be applied is that the findings of the cir-

cuit court will not be disturbed unless they are against the manifest weight of the evidence. (*Hufford v. Balk* (1986), 113 Ill. 2d 168.) From our examination of the record presented here, we conclude that, in any event, the trial court's findings were not against the manifest weight of the evidence.

Further, we do not believe that the trial court erred in denying Jarvis leave to amend count II of its counterclaim. The law is clear in Illinois that the allowance of an amendment to pleadings rests within the sound discretion of the trial court. (*Beatrice Foods Co. v. Illinois Insurance Guaranty Fund* (1984), 122 Ill. App. 3d 172, 175, 460 N.E.2d 908.) Before a trial judge can be found to have abused his discretion in denying a party leave to amend, it must be clear from the record that reasons or facts were presented to the trial judge as a basis for requesting the favorable exercise of the judge's discretion. (*Hassiepen v. Marcin* (1974), 22 Ill. App. 3d 433, 436, 318 N.E.2d 162.) Here Jarvis failed to advise the trial court how any amendment would remedy the defects in its written pleadings. The materiality of the amendment was neither apparent from the proceedings nor made apparent to the trial judge. (See *Intini v. Schwartz* (1979), 78 Ill. App. 3d 575, 579, 397 N.E.2d 84.) The law is also clear that it is indeed appropriate to dismiss a complaint or refuse leave to amend when it is apparent that no cause of action can be stated. (*Lee v. Conroy* (1973), 13 Ill. App. 3d 694, 696, 300 N.E.2d 505.) Under the facts presented here, it is clear that no amendment of Jarvis' claim would state a cause of action. Consequently, we find that the trial court did not abuse its discretion in denying Jarvis leave to file an amended counterclaim. See *Flannery v. Marathon Oil Co.* (1979), 75 Ill. App. 3d 690, 694, 394 N.E.2d 706.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.