MJ & PARTNERS RESTAURANT
LIMITED PARTNERSHIP and
23 Food, Inc., Plaintiffs,

v.

David ZADIKOFF, Defendant.

Michael JORDAN and Jump, Inc.,
Plaintiff–Intervenors.

v.

MJ & PARTNERS RESTAURANT
LIMITED PARTNERSHIP and
23 Food, Inc., Defendants.

No. 97 C 8008.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 25, 1998.

Jack Samuel Tenenbaum, Brian D. Roche,
Andrew Hartman, Vlerie Nicolle Childers, H.

Brian Centeno, Sachnoff & Weaver, Ltd., Chicago, IL, for Plaintiffs.

Alan Warren Brothers, Hubert O. Thompson, Brothers & Thompson, P.C., Chicago, IL, for Defendant.

Frederick J. Sperling, Sondra A. Hemeryck, Andrew M. Perlman, Schiff, Hardin 7 Waite, Chicago, IL, for Intervenor Plaintiff Michael Jordan and Jump, Inc.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff-intervenors Michael Jordan and Jump, Inc. (hereinafter collectively referred to as Jump) have filed a complaint for declaratory judgment, asking this court to find that, under the terms of three agreements, they are entitled to withhold approval of the opening of additional restaurants based on Jordan's name, likeness, voice and persona in the Chicago metropolitan area without having to justify the decision. Jump now moves for summary judgment. For the reasons stated herein, Jump's motion is granted.

### BACKGROUND

Plaintiff-intervenor Jordan is a resident of Illinois and president of plaintiff Jump, a District of Columbia corporation with its principal place of business in Illinois. Defendant 23 Food, Inc. (23 Food) is an Illinois corporation with its principal place of business in Illinois. Defendant MJ & Partners Restaurant Limited Partnership (MJ & Partners) is an Illinois limited partnership with its principal place of business in Illinois.

Jump and 23 Food are signatories to a restaurant license agreement dated September 12, 1990 (restaurant license agreement). The agreement granted 23 Food the right to use Jordan's name, likeness, voice, and persona (collectively, Name), and provides in relevant part as follows:

> Subject to the terms and conditions hereinafter set forth, Jump hereby grants to [23] Food, and Food hereby accepts from Jump, the exclusive right and license in the Chicago metropolitan area (herein defined as in the Cook, Lake, DuPage, Will, Kane and McHenry Counties, Illinois) to use the Name directly or through a partnership, joint venture or other entity of which Food is a partner, joint venturer, owner, or other equity holder (a "Restaurant Entity") to own and operate the Restaurant Business.

(Jump's 12(M) stmt.exh.A ¶ 1). The restaurant license agreement further stated that Jump "will not take any action or enter into any new agreements in the restaurant industry that in any manner violates or interferes with the rights granted to Food by Jump hereunder" (id. at ¶ 2).

Jump and Silverberg Sales, Inc. (Silverberg Sales) are signatories to a store license agreement dated as of September 12, 1990 (store license agreement). Under this agreement, Jump granted Silverberg Sales the right and license to use the Name in connection with the business of owning and operating a retail store located in, about, or within one block radius of "Michael Jordan's Restaurant" (restaurant) (Jump's 12(M) stmt. exh.B ¶ 1).

Joe Silverberg, H. Gene Silverberg (collectively, the Silverbergs), and Jump, are signatories to a letter agreement dated September 12, 1990 (side agreement), that supplements both the restaurant and store license agreements. This agreement stated that

> in the event [the Silverbergs], directly or through an entity or entities formed by [them], desire to open any additional restaurant based on the Name within [the Chicago metropolitan area] ..., Jump shall have the right to review and approve each additional restaurant opportunity on a case-by-case basis.

(Jump's 12(M) stmt.exh.C).

In April 1993, plaintiffs opened the restaurant at the corner of LaSalle and Illinois Streets in Chicago. On November 17, 1997, plaintiffs filed a lawsuit against David Zadikoff (Zadikoff), alleging that Zadikoff, who is the chief executive of the restaurant, violated plaintiff's federal rights conferred under the Lanham Act, and other Illinois state common law rights, by developing and publicizing his intent to open a restaurant in Chicago near the United Center using Jordan's name (cplt.¶ 7). In response, on November 26, 1997, plaintiff-intervenors filed their complaint for declaratory judgment.

## DISCUSSION

A motion for summary judgment may be granted where the pleadings and evidence present no genuine issues of fact and the movant is consequently entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). The movant must point to those portions of the record that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. The reviewing court shall draw all reasonable inferences in favor of the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). When it is clear that the plaintiff cannot carry her burden of persuasion at trial on one or more elements, summary judgment is appropriate for the defendant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is especially appropriate in a matter of contract interpretation where no issues of fact exist because the language of the contract is unambiguous. *Grundstad v. Ritt*, 106 F.3d 201, 205 (7th Cir.1997).

 Under Illinois law, the starting point of any contractual analysis is the language of the contract itself.[1] In interpreting a contract, our overriding concern is to give effect to the intent of the parties. *Church v. General Motors Corp.*, 74 F.3d 795, 799 (7th Cir.1996). If a contract is clear and unambiguous, we must determine the intention of the parties "solely from the plain language of the contract" and may not consider extrinsic evidence outside the "four corners" of the

document itself. *Tishman Midwest Management Corp. v. Wayne Jarvis, Ltd.*, 146 Ill.App.3d 684, 102 Ill.Dec. 538, 500 N.E.2d 431, 434 (1st Dist.1986).

 The dispute between the parties centers on Count II of Jump's complaint, which seeks a declaration that Jump has the right, under the side agreement, not to approve the opening by 23 Food or its sublicensees of any additional restaurants based on the Name in the Chicago metropolitan area. The side agreement provides that "Jump shall have the right to review and approve each additional restaurant opportunity on a case-by-case basis" (Jump's 12(M) stmt.exh.C). Jump argues that the plain language of the side agreement grants Jump the *absolute* right *not* to approve any additional restaurant, and that this right is unfettered by any restriction that the refusal to approve be "reasonable."

Jump supports this interpretation by contrasting the approval provision contained in the side agreement with other contractual provisions where Jump is granted a "right to approve."[2] For instance, Jump points to the restaurant license agreement which provides that, in the event that 23 Food is unable to secure the agreed-upon location for the restaurant, it "shall have the right to obtain a substitute location, subject to the prior written approval of Jump, which approval shall not be unreasonably withheld" (Jump's 12(M) stmt.exh.A ¶ 1). The restaurant license agreement contains a similar clause regarding advertising materials. It provides that prior to releasing such materials to the public, they "shall be submitted by the Restaurant Entity to Jump for its approval, which approval shall not be unreasonably withheld" (Jump's 12(M) stmt.exh.A ¶ 6). Again, in the store license agreement, Jump is granted the "right to approve the products bearing the Name" which are to be sold at the retail store, provided that Jump "will not unreason-

---

1. In cases involving contractual disputes, "Illinois law respects the contract's choice-of-law clause as long as the contract is valid." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir.1996). Since the restaurant license agreement in this case provides that the "validity, construction and enforceability of this Agreement shall be governed in all respects by the laws of the State of Illinois," we will apply Illinois contract law.

2. As Jump points out, it is proper for this court to construe the "additional restaurant" provision contained in the side agreement in the context of the restaurant and store license agreements, since all three documents were executed at the same time by the same parties. *See Home Sav. Ass'n of Kansas City v. State Bank of Woodstock*, 763 F.Supp. 292, 296–97 (N.D.Ill.1991).

ably withhold any approval requested hereunder" (Jump's 12(M) stmt.exh.B ¶ 1). Jump argues that these examples demonstrate that where the parties intended to limit Jump's discretion with respect to specific issues, it clearly knew how to do so. The omission of a reasonableness restriction on Jump's right to approve additional restaurants, therefore, must be viewed as an intentional decision. It would, according to Jump, be improper for this court to imply such a restriction, as that would be tantamount to judicial revision of the parties' manifest intent.

■ Plaintiff 23 Food, however, rejoins that no such "intentional" action can be imputed to the parties with respect to the omission of restrictive language in the side agreement. Instead, it argues, the provision governing 23 Food's "expansion rights" must be viewed as incorporating the implied contractual terms mandated by Illinois common law. Specifically, 23 Food contends that Jump's discretionary authority in approving additional restaurants is not absolute, but rather limited by the implied covenant of good faith and fair dealing. Under Illinois law, a covenant of good faith and fair dealing is implied in every contract unless expressly disavowed. *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958, 971 (1st Dist.1984); *Foster Enterprises v. Germania Federal Sav.*, 97 Ill. App.3d 22, 52 Ill.Dec. 303, 421 N.E.2d 1375, 1382 (3d Dist.1981). This covenant requires that contractual discretion be exercised reasonably and not arbitrarily or capriciously. *Greer Properties, Inc. v. LaSalle Nat'l Bank*, 874 F.2d 457, 460 (7th Cir.1989).

23 Food asserts that since the parties did not agree to expressly disclaim the implied covenant, it must be deemed fully incorporated into the side agreement. The fact that the parties were careful in other sections of the agreements to specify when Jump's discretion was limited is, according to 23 Food, not dispositive. To the contrary, it argues that, when viewed as a whole, the contract discloses the parties' intention to incorporate the implied covenant of good faith and fair dealing. Specifically, 23 Foods notes that the restaurant license agreement contains a provision governing Jordan's appearances at the restaurant which states that "[a]ny appearance by Jordan ... shall be in his sole

and final judgment" (Jump's 12(M) stmt. exh.A ¶ 12(g)). This shows, according to 23 Food, that where the parties intended to waive the reasonableness limitation, they clearly knew how to do so, and that we must infer that its omission in the side agreement was intentional. As to the instances where the parties included express reasonableness requirements, 23 Food states that they exist merely to supplement the implied term of good faith and fair dealing.

However, it is not so clear, as 23 Food contends, that the covenant of good faith and fair dealing is an absolute principle that requires an incorporation of an objective "reasonableness" limitation into every contract where one party is vested with a certain amount of discretion. To the contrary, many courts have found that the covenant must be viewed in reference to the reasonable expectations held by the parties at the time the instrument in question was drafted. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir.1992); *Dayan*, 81 Ill.Dec. 156, 466 N.E.2d at 972. Thus, "[i]n describing the nature of [the implied limitation on a contracting party's discretion] the courts have held that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or *in a manner inconsistent with the reasonable expectations of the parties*." *Dayan*, 81 Ill.Dec. 156, 466 N.E.2d at 972 (emphasis added). *See also, Beraha*, 956 F.2d at 1444; *First Nat. Bank of Cicero v. Sylvester*, 196 Ill.App.3d 902, 144 Ill.Dec. 24, 554 N.E.2d 1063, 1070 (1st Dist.1990), *appeal denied*, 133 Ill.2d 555, 149 Ill.Dec. 320, 561 N.E.2d 690 (1990). 23 Food contends that we must view the reasonableness limitation on a contracting party's discretion as an independent implied term that is waivable only by express contractual language. In other words, it argues that the components of the duty of good faith—that the party exercising discretion do so "reasonably," with "proper motive," and not "arbitrarily" or "in a manner inconsistent with the reasonable expectations of the parties"—are independent duties, each of which must be complied with. Jump, on the other hand, contends that the components of the duty must be read together, such that a party only acts "unreasonably" if it acts in a

manner that is "inconsistent with the parties' reasonable expectations."

■ We think that Jump is correct on this point. It is well established that the covenant of good faith and fair dealing is not an independent source of duties for parties to a contract, but rather is simply a guide to the construction of the explicit terms of the agreement. *Beraha*, 956 F.2d at 1443. Therefore, an implied reasonableness restriction must be viewed in light of what the parties explicitly bargained for. It is only where a party acts in a manner that could not have been contemplated at the time of contracting that courts will step in and impose a good faith requirement: " 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved by the parties." *Kham & Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1357 (7th Cir.1990).

The possibility that Jump might unreasonably decide not to approve the opening of additional restaurants was one that clearly could have been contemplated at the time of drafting. In fact, as Jump points out, the parties explicitly limited Jump's discretion in every other instance where Jump's approval was necessary as a condition precedent to Silverberg's actions. We think that this demonstrates that the parties carefully considered Jump's exercise of discretion throughout the agreements, and, where they thought it was necessary, explicitly limited Jump's discretion by inserting language which stated that approval could not be "unreasonably withheld." Based on this pattern, 23 Food cannot now say that the parties failed to resolve the issue of Jump's discretion because it was outside the scope of their contemplation and that this court must incor-

porate an implied term of good faith to "fill the gap." *Kham & Nate's Shoes No. 2*, 908 F.2d at 1357. Jump does not attempt to take advantage of latent ambiguities or unresolved issues and therefore cannot be said to be in violation of its duty of good faith.

To the contrary, this case presents a situation where the parties clearly contemplated the specific contexts in which Jump was to exercise limited discretion to pre-approve plaintiffs' actions. Where the parties wanted to insert a reasonableness restriction limiting Jump's right to approve, they included language in the contract to provide for it. In contrast, they included nothing limiting Jump's discretion to disapprove additional restaurants. As a result, Jump is free to reject plaintiff's proposals to expand as it sees fit. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995). 23 Food cannot now rely on the covenant of good faith to override the clear meaning of the additional restaurant provision as agreed upon by the contracting parties: "Although courts often refer to the obligation of good faith that exists in every contractual relation, this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document." *Kham & Nate's Shoes No. 2*, 908 F.2d at 1357. We therefore conclude that Jump's construction of the side agreement is wholly consistent with the parties' reasonable expectations and does not violate the covenant of good faith and fair dealing.[3]

The parties' inclusion of the appearance provision in the restaurant license agreement does not undermine this conclusion. Although that provision states that Jordan's decision whether to appear at the restaurant is "in his sole and final judgment," it does not, as 23 Food contends, alter Jump's interpretation of the side agreement. This is

---

**3.** The cases cited by 23 Food are not contrary to our conclusion. Those cases did not deal with a contractual provision granting discretion that was, as here, placed side-by-side with similar provisions where discretion was clearly limited. Rather, they involved free-standing grants of discretionary authority to one party. *See, e.g., Olympic Chevrolet, Inc., v. General Motors Corp.*, 959 F.Supp. 918, 923 (N.D.Ill.1997) (finding automobile manufacturer's discretionary authority to determine how many and which vehicles were to be sent to dealer was limited by covenant of

good faith); *Foster Enterprises v. Germania Federal Sav.*, 97 Ill.App.3d 22, 52 Ill.Dec. 303, 421 N.E.2d 1375, 1381 (3d Dist.1981) (finding that provision granting party discretion to determine whether market value appraisal was acceptable requires that the party not reject appraisal except for satisfactory cause). In fact, at least one of the cases that 23 Food cites supports the proposition that the principle of good faith requires that a party exercise discretion in a manner consistent with the parties' reasonable expectations. *Dayan*, 81 Ill.Dec. 156, 466 N.E.2d at 972.

because the appearance provision, unlike the other provisions dealing with Jump's prior approval, does not require that 23 Food seek Jump's approval prior to taking some contractually identified action. To the contrary, this clause merely makes clear that Jordan cannot be obligated to appear at the restaurant and that any appearances he does make are within his sole judgment. This is very different from the site acquisition, advertising, and product licensing provisions discussed above where Jump was granted the explicit right to approve 23 Food's or Silverbergs' actions, subject to a reasonableness requirement. We believe that these provisions are nearly identical to the additional restaurant provision in the side agreement (except for the crucial limiting language) and thus are properly viewed as bearing on the parties' intent with respect to the inclusion or omission of a reasonableness restriction. The appearance provision is not relevant in this regard.

In the final section of its brief, 23 Food attempts to show how the imposition of a good faith standard on Jump's discretion to disapprove additional restaurants would be consistent with the parties' reasonable expectations. First, it argues that since the parties expressly adopted Illinois law in their agreements, they also adopted the implied covenant of good faith and fair dealing. However, this argument begs the question, since, as we have already discussed, the covenant is not an absolute principle, but rather is viewed in relation to the parties' reasonable expectations. It is circular for 23 Food to argue that the incorporation of the covenant would be consistent with reasonable expectations simply because Illinois law adopts a reasonable expectations test. We therefore reject this argument.

23 Food next argues that Jump's discretion to disapprove additional restaurants should be limited since "Plaintiffs have turned the Michael Jordan's Restaurant concept into an overwhelming success and ... Mr. Jordan has personally received significant monetary benefits in the form of royalty payments to the parties' agreements due that success [sic]." (Plfs.Opp.Mem.at 9). Further, since the opening of additional restaurants could result in sales of "approximately $60–80 million dollars per year," a substantial amount of that going to Jordan, Jump should not be allowed to arbitrarily deny such an expansion (*id.* at 10). We do not see why the restaurant's current or future success has any bearing on Jump's ability to exercise unfettered discretion with respect to the approval of any additional restaurants. The "monetary benefits" Jordan has received or could possibly receive from plaintiffs pale in comparison to the international value of Jordan's name. It is not "unreasonable," then, for Jordan to want to strictly control the use of his name so that he could make decisions about its licensing that would allow him to achieve the highest possible financial return.

Finally, 23 Food argues that plaintiffs were granted the right to open additional restaurants based on the Name, and it is therefore consistent with the parties' expectations that Jump would not unreasonably prevent plaintiffs from their planned expansion. However, the language of the contract controls this point. That language simply provides that "in the event [the Silverbergs] .. desire to open any additional restaurants based on the Name ..., Jump shall have the right to review and approve each additional restaurant opportunity on a case-by-case basis." In other words, the contract does not grant plaintiffs any "right" to expand. Rather, it grants Jump the "right to review and approve" any proposed expansion. We will not impute any additional terms into the contract where the plain language is clearly and unambiguously to the contrary. *See Tishman Midwest Management Corp.,* 102 Ill.Dec. 538, 500 N.E.2d at 434.

Therefore, we find that under the agreements that govern the ownership and operation of the restaurant in this case, Jump has the right not to approve the opening of additional restaurants based on Michael Jordan's name, likeness, voice, and persona in the Chicago metropolitan area.

## CONCLUSION

For the foregoing reasons, Jump's motion for summary judgment on Count II is granted.