Roger D. KNOTT, Jr.; Carol J. Knott; Bascom Management, Inc., a California corporation, Plaintiffs–Appellants,

v.

McDONALD'S CORPORATION, a Delaware corporation, Defendant–Appellee.

No. 97–16467.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1998.

Decided June 23, 1998.

Robert Zarco, Zarco & Pardo, Miami, Florida, for the plaintiffs-appellants.

Robert H. King, Jr., Sonnenschein Nath & Rosenthal, Chicago, Illinois, for the defendant-appellee.

Before: HALL and THOMAS, Circuit Judges, and WHALEY, District Judge.*

* Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

1. The district court amended its original unpublished order granting summary judgment to al-

CYNTHIA HOLCOMB HALL, Circuit Judge.

Roger and Carol Knott, along with Bascom Management, Inc. (a corporation owned and controlled by the Knotts), appeal the district court's summary judgment in favor of McDonald's Corporation in the Knotts' diversity action for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contractual relations.

The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. §§ 1291 & 1332. We affirm.[1]

## I

The Knotts operated two McDonald's restaurants in the San Jose area—the Bascom Avenue and Camden Way McDonald's—pursuant to franchise agreements with McDonald's. Around August 1995, the Knotts decided to sell their franchises. Jason and Julie Cartie, who owned and operated a McDonald's franchise in upstate New York, expressed an interest in buying the franchises. The Knotts and Carties entered into an agreement that provided that the Carties would purchase the franchises for $3.5 million but also granted the Carties an absolute right to withdraw from the contract. After the Carties flew to San Jose to meet with the Knotts, tour the McDonald's restaurants, and meet with McDonald's representatives, the Knotts and Carties abandoned the proposed sale. The Knotts eventually sold their franchises, and assigned "all [their] right, title and interest" in the franchises, to Dania and Cosme Fagundo for $2.85 million.

After the sale, the Knotts filed suit against McDonald's asserting two claims for relief, the first for breach of contract and breach of the implied covenant of good faith and fair dealing, and the second for tortious interference with contractual relations. The Knotts alleged that certain statements and disclosures that McDonald's representatives made to the Carties violated the franchise agree-

low for its publication. For this reason, we deem our opinion appropriate for publication as well. See 9th Cir. R. 36–2(e).

ments and caused the proposed sale to the Carties to fall through. McDonald's moved for summary judgment on both claims. The district court denied the Knotts' Rule 56(f) discovery motion and entered summary judgment for McDonald's. The district court ruled that the Knotts had assigned away their right to sue for breach of contract and had not identified an enforceable contract with which McDonald's could have tortiously interfered.[2]

## II

The Knotts first claimed that McDonald's materially breached its franchise agreements and the implied covenant of good faith and fair dealing through its "discriminatory, arbitrary, unreasonable and unfair interference" with the prospective sale of the Knotts' franchises to the Carties. The district court ruled that, under Illinois law,[3] the Knotts lacked standing to assert these claims as they had assigned all of their rights under the franchise agreements to the Fagundos, the eventual purchasers of the franchises.

■ The Knotts do not contest that rights attached to a contract, including the right to sue for breach of contract, are assignable. Rather, the Knotts contend that their assignment of rights to the Fagundos did not include the right to sue for breach of contract because they never intended to assign that right. The Knotts' focus on intent is proper to a point. "The undisputed Illinois rule of law is that whether an assignment of contract rights has occurred is a function of the intent of the parties." *McHenry Hosp. v. Metropolitan Life Ins. Co.*, 578 F.Supp. 122, 124 (N.D.Ill.1983). Where the assignment is memorialized in a clear and unambiguous writing, however, a court should not look to extrinsic evidence to ascertain intent. *Cf. Strosberg v. Brauvin Realty Servs., Inc.*, 229 Ill.Dec. 361, 691 N.E.2d 834, 844 (Ill.Ct. App.1998) ("When there is no writing to evidence the intention to transfer some identifi-

able property, claim or right, it is necessary to scrutinize the surrounding circumstances and acts of the parties to ascertain their intentions.").

■ Notwithstanding broad language in *Young v. Chicago Fed. Sav. & Loan Ass'n*, 180 Ill.App.3d 280, 129 Ill.Dec. 212, 535 N.E.2d 977 (1989), that "[t]he intent of the parties to an assignment is a question of fact to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances," *id.* at 979, resort to extrinsic evidence to interpret an *unambiguous* assignment would conflict with the requirement that assignments be interpreted "in the same way as any other contract." *Lowrance v. Hacker*, 888 F.2d 49, 51 (7th Cir.1989). "If a contract is clear and unambiguous, [the court] must determine the intention of the parties 'solely from the plain language of the contract' and may not consider extrinsic evidence outside the 'four corners' of the document itself." *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 995 F.Supp. 929, 930–31 (N.D.Ill. 1998) (quoting *Tishman Midwest Management Corp. v. Wayne Jarvis, Ltd.*, 146 Ill. App.3d 684, 102 Ill.Dec. 538, 500 N.E.2d 431, 434 (1986)).

■ Whether or not a contract is ambiguous is a question of law. *See National Tea Co. v. American Nat'l Bank and Trust Co. of Chicago*, 100 Ill.App.3d 1046, 56 Ill.Dec. 474, 427 N.E.2d 806, 808 (1981). Pursuant to their purchase and sale agreement, the Knotts expressly assigned "*all* [their] right, title and interest" in the franchises to the Fagundos. This assignment, while admittedly broad, is not ambiguous. As the district court repeatedly noted at the hearing on McDonald's summary judgment motion, "all" is an all-encompassing term and leaves little doubt as to what rights the Knotts assigned to the Fagundos and what rights they retained. In short, "all" means all.

---

2. Because we affirm these rulings, we need not consider the district court's alternative ruling that the Knotts failed to establish a genuine issue of material fact as to whether McDonald's alleged interference dissuaded the Carties from purchasing the Knotts' franchises.

3. The parties do not dispute that, pursuant to a choice of law provision in the franchise agreements, Illinois law governs the interpretation of the franchise agreements and assignment of rights thereunder.

This was precisely the holding of the Northern District of Illinois in *Burkes v. McDonald's Corp.*, No. 96 C 7093, 1997 WL 28300 (N.D.Ill. Jan.21, 1997), in which a McDonald's franchisee assigned "all" franchise rights to the purchaser of its franchise and subsequently sued McDonald's for breach of contract. The court dismissed the claim, holding that the franchisee had transferred its right to sue for breach of contract to the franchise buyer under the unambiguous language of the assignment. *Id.* The *Burkes* plaintiff also claimed that it did not intend to assign its right to sue for breach of contract, and *Burkes* is not distinguishable simply because the Knotts, perhaps unlike the plaintiff in *Burkes*, provided sworn testimony concerning their intent. The *Burkes* court rejected the plaintiff's intent argument not because of a lack of sworn testimony, but instead because the plaintiff's purported intent conflicted with "the clear, unambiguous language of the purchase agreement." *Burkes*, 1997 WL 28300, at *2. Whether or not *Burkes* has precedential value within the Seventh Circuit, the court's reasoning proves useful in analyzing the present dispute.[4]

Because the clear and unambiguous language of the Knotts' assignment evinces an intent to transfer to the Fagundos "all" rights under the franchise agreements, we affirm the district court's summary judgment on the first claim for relief.[5]

## III

■ The district court also entered summary judgment for McDonald's on the Knotts' second claim for relief, for "Tortious Interference with Contractual Relations." The district court ruled that, under California law,[6] the absence of an enforceable contract with which McDonald's interfered was fatal to this claim.

The existence of a valid contract between plaintiff and a third party is an essential element of a claim of tortious interference with contractual relations. *See Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 270 Cal.Rptr. 1, 3–4, 791 P.2d 587 (1990). A "valid" contract in this context is an enforceable contract, i.e., more than a mere expectancy. *See PMC, Inc. v. Saban Entertainment, Inc.*, 45 Cal.App.4th 579, 52 Cal.Rptr.2d 877, 889 (1996). The agreement executed by the Knotts and the Carties provided the Carties the right to "withdraw from the purchase [of the franchises] at any time with no penalty, loss of deposit, or any further legal action by the Knotts." Thus, the contract with which McDonald's allegedly interfered was not an enforceable contract for purposes of the Knotts' tortious interference claim.

Because the Knotts could not establish an essential element of their tortious interference claim, we affirm the district court's summary judgment on the second claim for relief.[7]

---

**4.** Although *Martino v. McDonald's Sys., Inc.*, 432 F.Supp. 499 (N.D.Ill.1977), *aff'd* 598 F.2d 1079 (7th Cir.1979), held that an assignment of "all rights, title and interest of all assets, tangible and intangible" in a McDonald's franchise did not operate as an assignment of an antitrust claim, the court offered no reasoning for this conclusion. *Id.* at 504. In light of the unique concerns underlying antitrust assignments, *see, e.g., Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437–39 (3d Cir.1993) (holding that assignments of antitrust claims are governed by federal law and cannot be part of a general assignment), we find the opinion of little persuasive value in the present breach of contract context.

**5.** The Knotts waived their argument that the assignment is unconscionable if read to include the right to sue for breach of contract. *See, e.g., Arizona v. Components Inc.*, 66 F.3d 213, 217 (9th Cir.1995) (argument waived by failure to raise in district court). The only unconscionability argument the Knotts made below was that the assignment would be unconscionable if read to include *both* their breach of contract and tortious interference claims. In any event, the Knotts do not contend that they ever attempted to negotiate the terms of the assignment, and the surrender of the Knotts' breach of contract claim would not likely have rendered the assignment unconscionable even if they had.

**6.** The parties do not dispute that California law governs the Knotts' tortious interference claim.

**7.** The district court did not err by failing to construe the Knotts' claim of tortious interference with contractual relations as a claim of tortious interference with prospective economic advantage. The Knotts pled only the former tort, and the California Supreme Court has warned against blurring the line between these distinct claims. *Della Penna v. Toyota Motor Sales,*

## IV

Finally, we hold that the district court did not abuse its discretion in denying the Knotts' Rule 56(f) motion. None of the evidence sought by the Knotts could have changed the clear and unambiguous language of their assignment or rendered enforceable their contract with the Carties. Accordingly, none of the evidence sought could have forestalled summary judgment.

**AFFIRMED.**

*U.S.A., Inc.,* 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 447, 902 P.2d 740 (1995). It would be particularly odd to find error in the present case, where the Knotts did not even raise the district court's failure to construe their claim as one of tortious interference with prospective economic advantage in their motion for reconsideration of the summary judgment ruling.