STELLA SAUNDERS, Plaintiff-Appellant, v. MICHIGAN AVENUE NATIONAL BANK, Defendant-Appellee.

First District (4th Division)    No. 1—94—1047

Opinion filed March 7, 1996.

308

Daniel A. Edelman, Cathleen M. Combs, and Tara L. Goodwin, of Edelman & Combs, and Lawrence Walner, of Lawrence Walner & Associates, all of Chicago, for appellant.

Aronberg, Goldgehn, Davis & Garmisa, of Chicago (Nathan H. Lichtenstein, John M. Riccione, and William J. Serritella, Jr., of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Stella Saunders (Saunders), appeals from the trial court's order granting defendant's motion to dismiss her third amended complaint. Saunders sued defendant, Michigan Avenue National Bank (Bank), after the Bank charged her over $200 for an overdraft of approximately $4.61. Saunders brought the action on behalf of herself and others similarly situated.

On appeal, Saunders argues that the trial court erred in dismissing her complaint, claiming that she stated the following causes of action: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)); (2) the imposition of an unenforceable penalty; (3) breach of the duty of good faith and fair dealing; and (4) the Bank's overdraft policy was unconscionable. In addition to its contention that Saunders fails to state a claim, the Bank argues that federal banking laws preempt Saunders' claims. Finally, the Bank contends that Saunders waived review of certain counts by failing to address them in her notice of appeal. We affirm.

In February of 1988, Saunders opened a checking account with the Bank. At the time she opened her account, the Bank provided Saunders with written information describing the services and charges associated with the account. Specifically, Saunders received a pamphlet which stated that the Bank charged $20 per day for overdrafts. The pamphlet, however, did not define the term "overdraft."

On October 31, 1990, a check in the amount of $8.10 was pre-

sented to the Bank against Saunders' account, which had a balance of only $3.49. The Bank honored the check and charged Saunders the $20 overdraft fee. When a second check was presented against Saunders' overdrawn account on November 14, 1990, the Bank returned it for insufficient funds (NSF). The Bank refused to honor the second check when it was returned again for payment on November 20, 1990.

As a result of the first check, the Bank imposed the $20 overdraft charge against Saunders' account on 11 separate occasions. This resulted in a negative balance of $244.61. Finally, on December 20, 1990, Saunders deposited the $244.61 and closed her account.

On February 19, 1993, Saunders filed a second amended complaint, alleging the following counts: (I) violation of the Consumer Fraud Act (815 ILCS 505/2 (West 1992)); (II) the charges constituted an unenforceable penalty; (III) the charges were unconscionable; and (IV) the Bank violated the Illinois Interest Act (815 ILCS 205/4a (West 1992)), respectively. On July 1, 1993, the trial court granted the Bank's motion to dismiss on counts I, II and IV with prejudice. The court struck count III of the second amended complaint, the unconscionability claim, with leave to replead.

In August of 1993, Saunders filed her third amended complaint, alleging that the Bank breached the covenant of good faith and fair dealing and that the charges were unconscionable. The trial court dismissed Saunders' third amended complaint on March 21, 1994. Without leave of court, Saunders filed her appendix and exhibits to the third amended complaint on March 29, 1994. Included in this filing was Saunders' second amended complaint, which was referenced in, but omitted from, the third amended complaint. That same day, Saunders filed her notice of appeal from the order entered on March 21, 1994. For the reasons stated below, we affirm.

The standard of review of appeal from a motion to dismiss is whether the complaint sufficiently states a cause of action. *Commerce Bank, N.A. v. Plotkin*, 255 Ill. App. 3d 870, 627 N.E.2d 746 (1994). We do not consider the merits of the claim. *Commerce Bank, N.A.*, 255 Ill. App. 3d 870, 627 N.E.2d 746. All well-pleaded facts are accepted as true. *Bel Grade, Inc. v. Etheridge*, 229 Ill. App. 3d 624, 593 N.E.2d 91 (1992). With these principles in mind, we turn to the issues at hand.

■ The Bank contends that the National Bank Act preempted Saunders' arguments concerning the propriety of the overdraft charges. 12 U.S.C.A. § 38 (West 1989). Specifically, the Bank argues that Saunders' claims were preempted by section 7.8000 of the federal regulations, which provide:

"A national bank may establish any deposit account service

charge *** notwithstanding any state laws which prohibit the charge assessed or limit or restrict the amount of that charge. Such state laws are preempted by the comprehensive federal statutory scheme governing the deposit-taking function of national banks." 12 C.F.R. § 7.8000(c) (1994).

In response, Saunders claims that the Bank waived this issue by raising it for the first time on review. While the Bank argues that jurisdictional questions may be raised at any time, Saunders correctly notes that preemption is a constitutional question, not a jurisdictional issue.

■ Generally, reviewing courts will not rule upon constitutional issues unless they were raised and passed upon by the trial court. *Edelman v. California*, 344 U.S. 357, 97 L. Ed. 387, 73 S. Ct. 293 (1953); *Beckman v. Freeman United Coal Mining Co.*, 123 Ill. 2d 281, 527 N.E.2d 303 (1988). In the instant case, the issue of preemption raises constitutional concerns, not jurisdictional issues. We are not asked to determine whether the power to hold the proceeding lies with federal or state courts. See *People v. Kerr-McGee Chemical Corp.*, 142 Ill. App. 3d 1104, 492 N.E.2d 1003 (1986). Rather, we are deciding whether Saunders' state statutory and common law challenges can survive in light of federal legislation. Thus, the issue of whether the National Bank Act preempts Saunders' claims is resolved by applying the principles of the supremacy clause of the United States Constitution and is inherently a constitutional issue. U.S. Const., art. VI, cl. 2. As the Bank failed to raise this issue in the trial court, the issue is not properly before us.

■ Similarly, we find the Bank's argument that Saunders waived her right to appeal counts from her second amended complaint to be unavailing. The notice of appeal specified an appeal from only the March 21, 1994, order dismissing Saunders' third amended complaint. The Bank contends that Saunders' appeal is limited to those counts contained in her third amended complaint. As such, Saunders would be barred from seeking review of the Consumer Fraud Act and penalty counts from her second amended complaint.

We recognize that " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154, 449 N.E.2d 125, 126 (1983), quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272, 193 N.E.2d 833 (1963). Courts adhere to this rule to ensure that the court and the opposing party will be aware of the points at issue. *Foxcroft*

*Townhome Owners*, 96 Ill. 2d at 154, 449 N.E.2d at 126. In this case, however, Saunders' third amended complaint does refer to the prior complaints. Specifically, footnote one of the third amended complaint provides that "[t]he prior complaints are attached as *Appendix A* to preserve the previously dismissed claim [*sic*] for appeal." As such, the third amended complaint properly referenced the prior complaints, preserving the issues for review.

The Bank notes that Saunders failed to attach the prior complaints to the third amended complaint. Saunders waited until March 28, 1994, approximately six months after filing the third amended complaint, to attach the appendix and exhibits without leave of court. We do not believe Saunders' oversight is fatal. A notice of appeal is to be liberally construed. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 394 N.E.2d 380 (1979). This court is not deprived of jurisdiction where the deficiency in the notice of appeal was one of form only, and not of substance. *Burtell*, 76 Ill. 2d 427, 394 N.E.2d 380. We are unpersuaded that the Bank was prejudiced by Saunders' failure to attach the prior complaints. The third amended complaint expressly stated that the prior complaints were incorporated for purposes of preserving the issues for appeal. As such, Saunders' filings served the purpose of informing the Bank that it would seek review of issues raised in the prior complaints. *Burtell*, 76 Ill. 2d 427, 394 N.E.2d 380. Finding that all of Saunders' arguments are properly before us, we will now address the substantive issues on appeal.

■ In count I of her second amended complaint, Saunders claimed that the Bank's conduct violated the Consumer Fraud Act. In order to state a claim under the Consumer Fraud Act, Saunders must allege only the following: (1) a deceptive act or unfair practice; (2) an intent on the Bank's part that Saunders rely on the deception; and (3) that the deception occurred during trade or commerce. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 607 N.E.2d 194 (1992). Saunders argues that she states a claim under the Consumer Fraud Act by alleging first that the Bank's conduct was deceptive and then that the overdraft scheme was unfair. We will address each argument in turn.

■ Saunders alleges that the Bank's conduct was deceptive because the agreement did not define the term "overdraft"; the listing of the overdraft charge was buried in several documents; and the agreement did not clearly disclose that the $20 charge would be assessed separately. Saunders argues that the Bank's conduct constituted an omission or misrepresentation under the Consumer Fraud Act.

We reject Saunders' argument that the Bank essentially hid the

overdraft charge. We note that the Bank has no duty to define "overdraft." See *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 499 N.E.2d 440 (1986). Saunders received all the information necessary concerning overdraft charges. *Adler v. William Blair & Co.*, 271 Ill. App. 3d 117, 648 N.E.2d 226 (1995). As such, the Bank eliminated any confusion concerning overdraft charges by providing Saunders with pamphlets that expressly stated that it would charge $20 per day for overdrafts. *Robacki v. Allstate Insurance Co.*, 127 Ill. App. 3d 294, 468 N.E.2d 1251 (1984). Saunders accepted the unambiguous fee terms by opening her account. *In re Estate of Szorek*, 194 Ill. App. 3d 750, 551 N.E.2d 697 (1990). We find no element of deception between the parties. Therefore, we affirm the trial court's ruling denying Saunders' Consumer Fraud Act claim.

Saunders then alleges that the Bank's conduct is unfair under the Consumer Fraud Act, because: (1) the Bank had an incentive to honor checks, as opposed to returning them NSF; (2) the Bank had sole discretion in determining whether to honor checks; and (3) the fees for overdrafts were excessive. Sanders correctly notes that she may allege that conduct is unfair under the Consumer Fraud Act without alleging that the conduct is deceptive. *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898 (1972).

■ Illinois courts determine whether conduct is unfair under the Consumer Fraud Act on a case-by-case basis. *Elder v. Coronet Insurance Co.*, 201 Ill. App. 3d 733, 558 N.E.2d 1312 (1990). In determining whether conduct is unfair, courts may rely upon interpretations of the Federal Trade Commission Act. 815 ILCS 505/2 (West 1992). In *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, the Supreme Court set out the requirements for establishing unfair conduct: (1) whether the practice offends public policy; (2) whether it is oppressive; and (3) whether it causes consumers substantial injury. 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898. We find that Saunders fails to satisfy this criterion.

Primarily, we note that charging an unconscionably high price generally is insufficient to establish a claim for unfairness under the Consumer Fraud Act. *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 575 N.E.2d 1378 (1991). Rather, the defendant's conduct must violate public policy, be so oppressive as to leave the consumer with little alternative but to submit, and injure the consumer. *Knecht Services, Inc.*, 216 Ill. App. 3d 843, 575 N.E.2d 1378.

For example, in *People ex rel. Fahner v. Hedrich*, 108 Ill. App. 3d 83, 438 N.E.2d 924 (1982), the court found that the owner of a mobile

home park was liable under the Consumer Fraud Act for prohibiting park residents from selling their sites without paying a large transfer fee. The court noted that the defendant was offering little or no service in exchange for the fee, other than to allow consumers to sell their property. The court concluded that: (1) charging an unconscionable high price for no services offends public policy; (2) the defendant's conduct was oppressive because the residents had no reasonable alternative but to pay the fee; and (3) the defendant's acts injured consumers. *Hedrich*, 108 Ill. App. 3d 83, 438 N.E.2d 924.

■ We find the instant case to be readily distinguishable. While Saunders has alleged an unconscionably high fee, this allegation alone is not enough to establish unfairness. Specifically, we find a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness.

Saunders not only had control over whether she would be assessed an overdraft fee, but was free to select another bank. *Larned v. First Chicago Corp.*, 264 Ill. App. 3d 697, 636 N.E.2d 1004 (1994). The Bank provided Saunders with all of the information necessary to make a meaningful choice in selecting banks. We find that the Bank's overdraft policy fails to rise to the level of unfairness necessary to support a claim under the Consumer Fraud Act. We affirm the trial court's ruling dismissing this claim.

■ In count II of her second amended complaint, Saunders alleges that the Bank's overdraft charge constituted an unlawful penalty. Section 356 of the Restatement (Second) of Contracts (1981) provides that parties to a contract may not set an unreasonably large penalty for the breach of an agreement. *Telenois, Inc. v. Village of Schaumburg*, 256 Ill. App. 3d 897, 628 N.E.2d 581 (1993). A clause in a contract which sets unreasonably large liquidated damages is an unenforceable penalty, violating public policy. *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 607 N.E.2d 1337 (1992). In the instant case, however, there is no clause prohibiting overdrafts, and the overdraft fees are not liquidated damages. Therefore, Saunders' argument that the fee constitutes an unenforceable penalty must fail.

■ This court is prohibited from finding an implied contract where an express one exists. *Decatur Production Credit Ass'n v. Murphy*, 119 Ill. App. 3d 277, 456 N.E.2d 267 (1983). The agreement between the parties explicitly contemplated overdrafts as evidenced by the $20-per-day charge. Specifically, the $20 overdraft charge was listed in an agreement entitled "Service Charges." We interpret that language to be an express agreement that the Bank will charge $20 a day for the service of honoring overdrafts. No reasonable interpreta-

tion of the documents supports Saunders' contention that such conduct was implicitly prohibited. Rather, the agreement between the parties expressly contemplated overdrafts and assessed a charge for that privilege.

Saunders then argues that the Bank had a policy of refusing to open accounts for individuals with a history of overdrafts and of closing accounts if there were repeated overdrafts. Saunders contends that these policies are indications of an implicit agreement not to write overdrafts. We disagree. The Bank's actions in other cases does not change the express agreement it chose to make with this customer. See *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 466 N.E.2d 958 (1984). We find that there was no implied agreement prohibiting overdrafts. Therefore, in the absence of a contract, there can be no unlawful penalty.

In her third amended complaint, Saunders alleges that the Bank's overdraft policy was a breach of the implied duty of good faith and fair dealing. The complaint specifically alleges the following constitute the breach: (1) the Bank assessed the fee on the day of the overdraft, but failed to notify the customer until days later; (2) the Bank assessed the fees until the customer covered not only the original overdraft, but the accumulated overdraft fees as well; and (3) the fee exceeded the overdraft fees of other banks. Generally, Saunders complains that the Bank's policy is inconsistent with her reasonable expectations. However, we find that the express agreement between the parties clearly controls what expectations are reasonable.

There is a duty of good faith and fair dealing included in every contract as a matter of law in Illinois. *Powers v. Delnor Hospital*, 135 Ill. App. 3d 317, 481 N.E.2d 968 (1985). The duty requires the party vested with discretion under the contract to "exercise that discretion reasonably and with proper motive, *** not *** arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d at 991, 466 N.E.2d at 972. Courts generally employ the doctrine as a construction tool in assessing the intent of the parties when a contract is ambiguous. *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 618 N.E.2d 418 (1993).

In the instant case, Saunders argues that the Bank breached its duty of good faith by abusing its discretion in determining whether or not to honor the check. Saunders correctly notes that problems relating to good-faith performance occur most frequently where one party is given broad discretion in performing. The instant case, however, does not involve an exercise of the type of discretion typically present in cases finding a breach of this duty. See *First National*

*Bank v. Sylvester*, 196 Ill. App. 3d 902, 554 N.E.2d 1063 (1990); *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 466 N.E.2d 958 (1984). Additionally, in *Dayan* the court noted that improper motive was a predominant theme in bad-faith cases. 125 Ill. App. 3d at 993, 466 N.E.2d at 972. Saunders has not alleged that the Bank acted with an improper motive in honoring the check instead of returning it NSF.

Nor do we accept Saunders' argument that the agreement between the parties was ambiguous because it did not define the term "overdraft." The agreement clearly notified Saunders of the daily overdraft charge. The agreement did not lull Saunders into believing that the Bank might not assess the charge daily or in certain instances. We reject Saunders' contention that the Bank breached its duty of good faith and fair dealing by assessing the charge at a rate less than disclosed. As stated by the court in *Resolution Trust Corp. v. Holtzman*:

> "Parties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith. [Citation.] Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the parties." 248 Ill. App. 3d at 113, 618 N.E.2d at 424.

We find that the contract clearly and unambiguously provides that the Bank will charge $20 per day for overdrafts. "When the terms of a contract are clear and unambiguous, they must be enforced as written and no court can rewrite a contract to provide a better bargain to suit one of the parties." *Resolution Trust Corp.*, 248 Ill. App. 3d at 112, 618 N.E.2d at 423. The Bank provided Saunders with materials which explicitly stated that it would charge her $20 per day for overdrafts. The Bank charged the overdraft fee within the parameters of the parties' agreement. Thus, Saunders' awareness of the Bank's right to charge the overdraft fee negates any inference that the Bank's actions were so far outside the parties' reasonable expectations as to constitute a breach of good faith. See *Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership*, 225 Ill. App. 3d 317, 587 N.E.2d 1169 (1992). Therefore, Saunders' claim that the Bank breached its duty of good faith and fair dealing must fail.

Finally, Saunders appeals the dismissal of her unconscionability claim. Saunders alleges that she could not negotiate the terms concerning the Bank's overdraft policy. Furthermore, she claims that her allegations that the overdraft fee was in excess of the services rendered, combined with the fact that the Bank had sole discretion in determining whether to assess the charge, reinforce her claim for unconscionability.

▉ While a contract is unconscionable when it is oppressive and one-sided, mere lack of bargaining power is not enough to sustain a claim for unconscionability. *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 457 N.E.2d 1226 (1983). Rather, an unconscionable contract is one that encompasses a lack of meaningful choice by one party. *Hartford Fire Insurance Co. v. Architectural Management, Inc.*, 194 Ill. App. 3d 110, 550 N.E.2d 1110 (1990). The test for establishing an unconscionable bargain is to determine whether the agreement is one which no reasonable person would make and no honest person would accept. *Larned v. First Chicago Corp.*, 264 Ill. App. 3d 697, 636 N.E.2d 1004 (1994).

For example, in *Ahern v. Knecht*, 202 Ill. App. 3d 709, 563 N.E.2d 787 (1990), defendant's repair service overcharged for fixing the plaintiff's pipes. Specifically, the defendant padded the bill, made undisclosed charges, charged for unnecessary parts and labor and, most importantly, threatened to undo the work if the plaintiff did not pay the fee immediately. *Ahern*, 202 Ill. App. 3d 709, 563 N.E.2d 787. The court held that the agreement was unconscionable, as the plaintiff lacked any meaningful choice in accepting its terms.

To the contrary, Saunders was free to open her checking account in any number of banks. The Bank provided Saunders with documents informing her that the charge for overdrafted checks was $20 per day. She was not intimidated or coerced into accepting the terms. Saunders was free to select from a multitude of other banks with a variety of services and fees. See *Larned v. First Chicago Corp.*, 264 Ill. App. 3d 697, 636 N.E.2d 1004.

Saunders argues that the excessive $220 charge in and of itself is adequate evidence of unconscionability. Such an argument, however, ignores Saunders' own role in establishing the charge. Saunders waited nearly two months before bringing her account to a zero balance. This resulted in the excessive charge for the overdraft. We disagree with Saunders' argument that such a policy was oppressive. Saunders' argument must fail as unconscionability is a legal issue that is assessed as of time of contract formation, not contract performance. *Ahern v. Knecht*, 202 Ill. App. 3d 709, 563 N.E.2d 787. As such, we find that the fee agreement was not unconscionable. Therefore, we affirm the ruling of the trial court dismissing Saunders' unconscionability claim.

Affirmed.

HOFFMAN, P.J., and O'BRIEN, J., concur.