NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0842n.06

No. 14-5331

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 12, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GERARD W. DEOM; | ) | |
| DEOM HEALTH ENTERPRISES, INC, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| WALGREEN COMPANY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUTTON and KETHLEDGE, Circuit Judges; ROSENTHAL, District Judge[*]

PER CURIAM. This case asks us to determine whether a complaint alleged a breach of the implied duty of good faith and fair dealing when the contract specified a condition precedent for a bonus payment to one party; the contract did not tell the other party to achieve the condition precedent or to make best or even reasonable efforts to try; the condition precedent was not met; and the bonus was not paid. The contract at issue was an agreement to sell the inventory and prescription records of three pharmacies, which then closed. The seller was to receive a bonus if the buyer filled a minimum number of prescriptions for the seller's former customers within a certain period after the sale. The buyer did not achieve the target number. The seller sued for breach of the implied covenant of good faith and fair dealing under Illinois law, which the parties'

_____

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

1

contract specified, alleging that the buyer had failed to prepare for the added business and provided poor customer service that drove the seller's former customers away and frustrated the bonus.

The district court dismissed the claim for breach of the implied duty of good faith and fair dealing under Rule 12(b)(6) of the Federal Rules of Civil Procedure. We agree that the complaint failed to state a claim for breach of the implied duty under Illinois law, and we AFFIRM the dismissal.

## I.

Gerard Deom and Deom Health Enterprises, Inc. owned and operated three pharmacies in Radcliff, Kentucky. In September 2011, Deom signed an Asset Purchase Agreement with Walgreen to sell the inventory and prescription records from his pharmacies for $3,500,000 and Walgreen's agreement to pay an additional $600,000 as an earnout bonus if it filled an average of at least 308 prescriptions daily for Deom's former customers in the nine months after the sale. If Walgreen filled more than 308 prescriptions daily, Deom could earn a larger bonus, up to $800,000.

Walgreen filled far fewer than the number of prescriptions needed to trigger the earnout bonus. Deom sued, alleging that Walgreen had either lied about how many prescriptions it filled or breached the implied duty of good faith and fair dealing by failing to be "adequately prepared" to serve Deom's former customers after the sale, and instead providing "substandard customer service," including "unhelpful staff" and "long waiting times." R. 1 at 4–5.

The district court granted Walgreen's motion to dismiss Deom's claim for breach of the implied duty but denied the motion to dismiss Deom's claim that Walgreen had lied about the number of prescriptions it filled. Walgreen produced evidence showing that it had filled fewer than a daily average of 308 prescriptions for Deom's former customers, and Deom agreed to summary judgment on this claim. Deom also asked the court to reconsider the dismissal of his claim for

2

breach of the implied duty. The district court again ruled that Walgreen did not owe Deom a duty of good faith and fair dealing because it did not have contractual discretion over whether Deom's former customers came to Walgreen for their prescription needs or went elsewhere.

We review the district court's dismissal *de novo*. *See Gunasekera v. Irwin*, 551 F.3d 461, 465–66 (6th Cir. 2009). We accept Deom's well-pleaded factual allegations as true and construe them in the light most favorable to him. *See Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that is plausible on its face. *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## II.

The Asset Purchase Agreement specified that Illinois law applied. Illinois law implies a duty of good faith and fair dealing in every contract, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003), but makes clear that this duty "has never been an independent source of duties for the parties to a contract." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *see also Oil Express Nat'l v. Burgstone*, 958 F. Supp. 366, 369 (N.D. Ill. 1997). Rather, it "is simply a guide to the construction of the explicit terms of the agreement." *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 995 F. Supp. 929, 933 (N.D. Ill. 1998) (citing *Beraha*, 956 F.2d at 1443).

In his complaint, Deom alleged that Walgreen violated the duty of good faith and fair dealing by:

3

> failing to take appropriate steps to ensure that it could perform its obligation to retain the DHE pharmacies' customers; failing to provide appropriate customer service []; creating an environment wherein many of the DHE pharmacies' customers sought and secured services from other pharmacies . . . [and] fail[ing] to take appropriate remedial measures to keep these customers. R. 1 at 6.

Deom additionally alleged that "Walgreen's customer service . . . was so poor that a number of other area pharmacists opened competing pharmacies." *Id.*

"In order to plead a breach of the covenant of good faith and fair dealing, a plaintiff must plead existence of contractual discretion." *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. Ct. App. 2004). As the district court noted, the parties' agreement "did not affirmatively obligate [Walgreen] to meet the prescription targets." R. 10 at 4.

Under Illinois law, the implied duty supplements a party's existing obligations only when that party has significant discretion in performing them. "[A] good-faith duty to exercise contractual discretion reasonably does not apply where no contractual discretion exists." *Id.*; *see also Bank One, Springfield v. Roscetti*, 723 N.E.2d 755, 764 (Ill. Ct. App. 1999). A party has contractual discretion over an obligation that is "contingent upon a condition particularly within the power of that party." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 674 (7th Cir. 2013) (quoting *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 972 (Ill. Ct. App. 1984)). The district court found that Walgreen did not have contractual discretion over the earnout bonus, reasoning that Walgreen could not control whether it filled enough prescriptions for Deom's former customers to trigger that bonus. Customer preferences and loyalty, population changes, and competition with other pharmacies affected whether Walgreen attracted or retained these and other customers. We disagree with this basis for dismissal, but affirm the dismissal on another ground.

4

Contractual discretion can be present when both external factors and factors within a party's control determine whether a condition precedent is met. *See Behara*, 956 F.2d at 1444 (holding that a medical device marketer had contractual discretion in developing and marketing the plaintiff's device under an exclusive license agreement even though the device's profitability would also depend on design feasibility and market demand); *Osten v. Shah*, 433 N.E.2d 294, 296 (Ill. App. Ct. 1982) (a party had contractual discretion in financing a home purchase even though its ability to get a mortgage "might depend on many variables, including interest rates, as well as loan demand"). A party need not have complete control over whether a condition precedent occurs to be subject to the implied duty of good faith and fair dealing. Rather, the party must have sufficient control to be able to prevent the condition from occurring. *Dayan*, 466 N.E.2d at 972 (contractual discretion exists when "the controlling party could have avoided incurring any contractual obligation by refusing to bring about the relevant condition").

The cases recognize that when, as here, an earnout clause makes a seller's bonus contingent on postsale business success, a buyer may have contractual discretion in how it runs the business so as to meet the target amount needed to trigger the earnout bonus. Such a provision benefits both the seller and the buyer, by allowing the seller to earn the bonus while the buyer increases its own business. *See, e.g.*, *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 920 (7th Cir. 1997); *Northbound Grp., Inc. v. Norvax, Inc.*, No. 11 C 6131, 2012 WL 394336, at *1 (N.D. Ill. Feb. 6, 2012); *see also O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1195–97 (10th Cir. 2004); *Jones v. Wright Travel Agency, Inc.*, No. 2:04-cv-724-DB, 2006 WL 3025991, at **1–2, 8 (D. Utah. Oct. 23, 2006); *Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. Civ-A-05-398, 2005 WL 3605272, at **2–3 (E.D. Pa. Dec. 30, 2005); *Tagare v. Nynex Network Sys. Co.*, 994 F. Supp. 149, 159–60 (S.D.N.Y. 1997).

5

At the pleadings stage, we take as true Deom's factual allegations that Walgreen provided inadequate staffing and resources to serve the added customers from Deom's stores in order to attract and retain their prescription business. Based on the allegations in the complaint, we cannot find as a matter of law that the implied duty claim fails for lack of Walgreen's contractual discretion over how it responded to the foreseeable increased staff and time needed to serve these customers. Walgreen had contractual discretion over the quality and quantity of service it provided its existing customers and Deom's former customers, even though other factors clearly influenced the number of prescriptions Walgreen filled. Walgreen's discretion over how it served customers' prescription needs was limited by the implied covenant of good faith and fair dealing.

Deom's claim still fails, however, because, based on the contract here, Illinois law requires allegations that Walgreen acted in bad faith, not just unreasonably or negligently. The implied covenant of good faith and fair dealing requires a party vested with contractual discretion to "exercise that discretion reasonably and with proper motive, and [not] arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Beraha*, 956 F.2d at 1443 (quoting *Dayan*, 468 N.E.2d at 972) (emphasis added); *see also Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. App. Ct. 1993). A plaintiff generally must plead improper motive to state a claim for breach of the implied covenant.

Illinois follows the RESTATEMENT (SECOND) OF CONTRACTS, which states that "good faith . . . excludes a variety of types of conduct characterized as involving 'bad faith.'" RESTATEMENT (SECOND) OF CONTRACTS § 205 (1979), cmt. a. Improper motive is a "predominant theme" in implied covenant cases under Illinois law. *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 610 (Ill. App. Ct. 1996). The party exercising discretion cannot act in bad faith, with "dishonest purpose," "ulterior motives," or an "intent to harm" the other party. *O'Tool*, 387 F.3d at 1197

6

(applying Delaware law). "Where a party acts with improper motive . . . that party is exercising contractual discretion in a manner inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith." *Peterson v. H&R Block Tax Servs.*, 971 F. Supp. 1204, 1212 (N.D. Ill. 1997) (quoting *Dayan*, 466 N.E.2d at 971) (omission in original)).

Deom argues that unreasonable behavior without bad faith is enough, noting that Illinois courts have also stated that a party must use "reasonable efforts" to bring about a condition precedent. *See, e.g.*, *Stender v. Nat'l Blvd Bank of Chicago*, 449 N.E.2d 873, 878 (Ill. App. Ct. 1983) ("Where the performance of a contingency or condition is within the control of a party to an agreement, the party for whose benefit the condition precedent runs is required to use 'reasonable efforts' to have it occur."). But in most of the cases Deom cites, the courts have not found violations of the implied covenant unless there was also an improper motive.[1] *See, e.g.*, *Rousonelos v. Leach*, Nos. 4-13-0268, 4-13-0269, 2013 WL 5972197, at *17 (Ill. App. Ct. Nov. 7, 2013) ("Whenever a

---

[1] Deom also relies on *E.B. Harper & Co. v. Nortek*, a Seventh Circuit case that might suggest that unreasonable conduct always violates the implied covenant of good faith and fair dealing under Illinois law. *See E.B. Harper & Co.*, 104 F.3d at 920 ("Illinois courts would excuse the condition that earn-out be paid only if Harper could prove that Nortek failed to use reasonable efforts to make, or acted in bad faith toward Harper to deny, a percentage of net earnings to the Pozzis."). In *E.B. Harper*, the Seventh Circuit held that applying issue preclusion to a claim of breach of the implied covenant was inappropriate because there was no evidence that the jury's breach of contract verdict was supported by a finding of either bad faith or unreasonable conduct. *Id.* at 923. To the extent the Seventh Circuit suggested that unreasonable conduct always violates the implied covenant of good faith and fair dealing under Illinois law, such a suggestion was dicta. More recent case law from the Seventh Circuit and from Illinois courts make clear that improper motive is generally required. *See Wilson*, 729 F.3d at 676 (holding that the plaintiff stated a plausible claim for breach of the implied covenant by alleging that the defendant terminated an incentive plan out of improper motive, because a termination for the sole purpose of "avoid[ing] the three conditions needed for [plaintiff] to earn a bonus . . . [was] contrary to the reasonable expectations of the parties."); *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 823 (N.D. Ill. 2010) (The implied covenant "imposes a duty 'not to be reasonable, but to avoid taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous.'"); *MJ & Partners Rest. Ltd. P'ship*, 995 F. Supp. at 932–33 (declining to incorporate an objective reasonableness limitation, and holding that the requirements to exercise discretion "reasonably," "with proper motive," and not "arbitrarily" are not independent duties, but must be read together and applied to reflect the parties' expectations under each contract).

7

party's non-cooperation is a deliberate attempt to prevent the other from receiving the fruits of the bargain, that party is guilty of bad faith in its classic definition.") (internal marks omitted); *Cummings v. Beaton & Assocs., Inc.*, 618 N.E.2d 292, 307–08 (Ill. App. Ct. 1992) ("whatever uncertainty there was that the condition of the contract might not have occurred, it was removed by the deliberate and wrongful act of the breaching party"); *Kipnis v. Mandel Metals, Inc.*, 741 N.E.2d 1033, 1038–39 (Ill. Ct. App. 2000) (finding that a party's intentionally uncooperative conduct violated the duty of good faith); *Dayan*, 466 N.E.2d at 972 (a party cannot, without good cause, "refus[e] to bring about the relevant condition" for which it exercises discretion); *Foster Enters., Inc. v. Germania Fed. Sav. & Loan Ass'n*, 421 N.E.2d 1375, 1381–82 (Ill. App. Ct. 1981) (upholding a jury's verdict that the defendant/appellant violated the duty of good faith because it rejected an appraisal out of "bad motive" rather than for legitimate reasons). In *Dayan*, the Illinois Appellate Court explained that "[w]here a party acts with improper motive . . . that party is exercising contractual discretion in a manner inconsistent with the reasonable expectations of the parties and therefore is acting in bad faith." *Dayan*, 466 N.E.2d at 972. While the court decided that "good cause to take particular action will constitute a defense to a finding that the actor is in bad faith" even if the actor had an improper motive, it did not decide or suggest that a breach of the implied covenant never requires bad faith or an improper motive. *Id.* at 974.

Courts applying Illinois law have rejected arguments that unreasonable behavior necessarily violates the implied duty of good faith. *See Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) ("There is no blanket duty of good faith; nor is reasonableness the test of good faith."); *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 823 (N.D. Ill. 2010) (The implied covenant "imposes a duty 'not to be reasonable, but to avoid taking advantage of gaps in a contract in order to exploit the vulnerabilities that arise when

8

contractual performance is sequential rather than simultaneous.'") (quoting *Original Great Am. Chocolate Chip Cookie Co.*, 970 F.2d at 280); *Foster Enters.*, 421 N.E.2d at 1381 ("[B]ad faith is not synonymous with erroneous judgment. There can be no relief from an erroneous judgment exercised in good faith pursuant to a valid discretionary power."). At least in cases like this, in which well over half of the consideration paid does not turn on a party's discretion, and the contract also includes a merger clause, mere negligence is not enough to show breach of the implied covenant. *See Beraha*, 956 F.2d at 1442; *see also Permanence Corp. v. Kennametal, Inc.*, 908 F.2d 98, 102 (6th Cir. 1990) (drawing from cases across states); 13 *Williston on Contracts* § 38:15 (4th ed.).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough "factual matter" to raise a "plausible" inference of wrongdoing. *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Although the existence of a more likely alternative explanation does not in itself entitle a defendant to dismissal, if the facts alleged are consistent with both legal conduct and "purposeful" conduct taken with improper motive, "the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *Id.* at 505–06.

Under Illinois law, to state a claim for breach of the implied covenant, Deom had to plead facts supporting a reasonable inference that Walgreen acted in bad faith, not just that it exercised poor — even negligent — business judgment. *See, e.g.*, *Saunders*, 662 N.E.2d at 610 (affirming dismissal because the plaintiff "ha[d] not alleged that [the defendant] acted with an improper

9

motive") (internal citations omitted).[2] Deom alleged that Walgreen was not "adequately prepared" to serve additional customers after the sale, and that it offered "substandard customer service." R. 1 at 4. Deom did not allege that Walgreen intentionally mismanaged its pharmacies or purposefully lost customers in order to defeat the earnout bonus. Nor did Deom plead that Walgreen's mismanagement of its pharmacies was specifically directed at Deom's former customers. Rather, Deom alleged that Walgreen gave all its Radcliff pharmacy customers, new and existing, bad customer service. Based on the parties' contract, that allegation does not state a claim.

Courts have recognized that when, as here, the seller's and buyer's economic interests are aligned and both stand to profit from attracting and retaining customers, it is facially implausible that a business buyer would intentionally drive off customers to frustrate paying the seller an earnout bonus. *See, e.g.*, *Sonoran Scanners, Inc. v. PerkinElmer, Inc.*, 590 F. Supp. 2d 196, 211 (D. Mass. 2008) *aff'd in part, rev'd in part*, 585 F.3d 535 (1st Cir. 2009) ("The parallel economic interests of the parties compels a conclusion that [the defendant] did not intend to deny Plaintiffs the fruits of the contract."); *Jones*, 2006 WL 3025991, at *8 ("The economic interests of [the plaintiff and the defendants] were at all relevant times aligned." "Unless the interests of the 'party exercising discretion pursuant to the contract diverge from the interests of the contractual venture, courts need not scrutinize the motivation behind that party's exercise of business judgment. Self-interest ensures that the goal of profit maximization for the venture, not bad faith, guides the party's decisions.'")

---

[2] Case law in other jurisdictions is consistent. *See, e.g.*, *Edlow v. RBW, LLC*, 688 F.3d 26, 36 (1st Cir. 2012) (applying Massachusetts law) (affirming dismissal because "the complaint articulate[d] no dishonest purpose, consciousness of wrong, or ill will"); *Miller Auto. Corp. v. Jaguar Land Rover N. Am., LLC*, 471 F. App'x 37, 40 (2d Cir. 2012) (applying Connecticut law) (affirming dismissal because "[the plaintiff] fails to allege fraud, misrepresentation, or improper motive on the part of [the defendant], as required to assert a claim for breach of the implied covenant of good faith and fair dealing . . ."); *Fifth Third Mortgage Co. v. Townstone Fin.*, No. 14-C-1878, 2014 WL 4414503, at *3 (N.D. Ill. Sept. 3, 2014) (applying Ohio law) (dismissing the claim because the plaintiff "ha[d] not alleged malice or any gross negligence that would amount to bad faith").

(quoting *Interpublic Grp. of Cos., Inc. v. Fratarcangelo*, No. 00-civ-3323-SHS, 2002 WL 31682389, at \*14 (S.D.N.Y. Nov. 26, 2002)); *Interpublic*, 2002 WL 31682389, at \*15 (granting summary judgment because "no reasonable trier of fact could conclude that [the defendant] violated the Merger Agreement's implied covenant of good faith and fair dealing" by "intentionally driving the company into the ground" and such an argument "defie[d] common sense and economic reality"); *Tagare*, 994 F. Supp. at 160–61 (granting summary judgment on the plaintiff's implied covenant claims and noting that "there would be no reason for [the defendant] to undermine its own interests by sabotaging his sales efforts" and the defendant "had abundant incentive not to suppress [] sales"). Deom's pleadings do not plausibly allege that Walgreen acted in bad faith by intentionally mismanaging its pharmacies, providing bad customer service, and alienating customers — existing and new — to avoid paying Deom an earnout bonus. As Deom has noted both below and on appeal, his allegations are equally consistent with conduct taken either "through negligence or by design," and could be explained by either "ineptitude or deliberate subversion." Appellant's Br. at 16; R. 14-1 at 3.

When, as here, the context makes the factual allegations at most consistent with both conduct that is actionable and conduct that is not, more is required to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Deom did not allege more. His complaint failed to allege a claim for breach of the implied duty of good faith and fair dealing.

We AFFIRM.

11